# CIRCUIT COURT OF BALTIMORE CITY.

Filed June 23, 1897.

ALEXANDER BROWN
VS.
SARAH G. MACGILL AND HUSBAND AND JAMES McEVOY, TRUSTEE.

*Marbury & Bowdoin* and *William L. Hodge* for plaintiff.

*Brown & Brune* and *Bernard Carter* for trustee.

DENNIS, J.—

In September, 1895, Mrs. Sarah G. Macgill, the defendant, being at that time the wife of Carroll S. Macgill, executed to Alexander Brown, the plaintiff, a promissory note for $2,000, for money loaned, the said note being payable on demand. The note was signed by her alone, and there is no evidence to show that her husband ever gave his assent to its execution, or was in any way a party to the loan. Prior to her marriage to Macgill, she had executed to James McEvoy, as trustee, a deed of trust (the terms of which will be recited later, so far as may be necessary for consideration in the present case) of all her property, it being property to which she was entitled in her own right, by virtue of inheritance from a former husband, who died in 1890. Beyond the property thus conveyed, the defendant had no estate.

This bill is filed upon the theory that the said note was a charge upon her separate estate, and as such is enforceable against the property in the hands of her trustee, McEvoy.

I think the testimony clearly shows that the loan in question was made upon the faith of the defendant's separate estate. The plaintiff looked solely to that as his security, and the defendant always, both before the loan and afterwards, referred to her property in the hands of her trustee, as the source from which she expected to repay it. The whole transaction was "a dealing with reference to her separate estate" which, under the decisions of the Court of Appeals, makes the claim one against that estate, insofar as she was able to create it. Fowler vs. Jacobs, 62 Md. Reps. 326. As all her separate estate was property which she had owned in her own right and conveyed to a trustee for her sole and separate use, it constituted what is called her *equitable* separate estate, as distinguished from her *statutory* separate estate: and her charge thereon did not, therefore, require for its validity the concurrence of her husband, as it would have done had the property been acquired by her under the statutory pro-

visions. This distinction is so well established in this State, that it seems unnecessary to refer to authorities.

Having created, therefore, a charge against this equitable separate estate, as valid as she was able to make it, the question is could she make a charge which could be enforced against it in the hands of her trustee, under the terms of the deed under which he held it?

That deed, after other stipulations unnecessary to recite for the purposes of this case, provided that the trustee, after making all proper deductions for taxes and other charges thereon, should "pay over the net rents, profits, dividends, interest and income of all of said property, real, personal and mixed, to her the said Sarah G. Graham (her name before her second marriage) during her natural life *into her own hands and not to another, whether claiming by her authority or otherwise*, for her sole and separate use, and upon her separate receipts, *without power of anticipation*, and excluding all right or interest in or power over the same of any husband she may have, or any liability for his debts, contracts or agreements."

Although in England, and some of the States of this country, a contrary doctrine prevails, it must be considered settled law in this State, since the case of Smith vs. Towers, in 69 Md. 77, that a donor has the right, in the distribution of property, either by deed or will, to so provide that it shall not be subject in any event to alienation or anticipation by the donee, and hence shall not be subject to the latter's debts, or any charges he may try to impose upon it; and this, too, without the necessity of a provision for limitation over, in the event of an attempted alienation or anticipation. As the provisions of the deed of trust executed while she was unmarried by Mrs. Macgill, contained almost the identical words against alienation and anticipation as were contained in the deed before the Court for consideration in Smith vs. Towers, the decision in that case would seem to be conclusive of the present controversy.

But it is contended that while the above conclusion may be true of a deed made by a stranger, yet it is not in the power of the owner of the property to himself make a deed of that property

for his own benefit, containing such provisions. The only case cited in support of this proposition is Warner vs. Rice, 66 Md. 436. I do not think that case is subject to any such construction, as the decision there was clearly based upon the terms of the deed then before the Court. But, even if it be true that there is this limitation upon the right of a man to make such provision against the right of alienation or anticipation upon property which he conveys to a trustee for his own benefit, yet it seems that the validity of such provisions have always been recognized in cases of settlements upon married women. Even in England, where the general doctrine against the right of alienation is most strongly insisted upon, it has been uniformly held since Lord Thurlow's day that there was an exception to the doctrine in favor of married women. This exception is discussed and fully admitted in the learned dissenting opinion of Judge Alvey in Smith vs. Towers, to which nothing can, with propriety, be added, except, perhaps, the brief and frank explanation of the ground upon which the exception rests, as made by Lord Chancellor Cottenham in Tullett vs. Armstrong, in 4 Milne & Craig, p. 405, where he says: "When this Court first established the separate estate it violated the laws of property as between husband and wife, but it was thought beneficial, and it prevailed. It being once settled that a wife might enjoy separate estate as a feme sole, the laws of property attached to this new estate, and it was found, as part of this law, that the *power of alienation belonged to the wife, and was destructive of the security intended for it. Equity again interfered, and by another violation of the laws of property supported the validity of the prohibition against alienation.* Thus, even in England, where the general rule against the right of alienation has been most insisted upon, an exception has always been made in the case of marriage settlements, and the restriction upon this right in such settlements is allowed. The policy of this exception is obvious; it is designed to secure protection for her, in her separate estate, not only against the debts of her husband, but against her own improvidences into which she may be led by his importunities. If a stranger, therefore, can donate property to her

with this restriction, why should she not be able to convey her own property upon similar limitation? Of course, the conveyance would not stand as against creditors existing at the time it was made; but all subsequent creditors would have full notice by reason of the recordation of the deed, and could have no right to complain. No case has been cited in opposition to this conclusion, and I have heard nothing in the argument of the learned counsel for the plaintiff, that seems to me, to at all refute the inferences and conclusions of the authorities to which I have referred. As so large a number of anti-nuptial settlements are cases where the married woman herself has created the trust, it is impossible to believe that the Courts should have intended to exclude this class of cases, when they have always used the broadest language in allowing restrictions upon alienation and anticipation in favor of married women, in all cases of marriage settlements. Certainly so great a break in the application of the rule must have been mentioned by some text-writer, or Judge, in the numerous cases that have been before the Courts; but no such suggestion can be found in any of the authorities which were cited at the hearing, nor in others which I have examined. I conclude, therefore, that no such exception exists, and that the right of restriction upon alienation in favor of a married woman in a marriage settlement exists as fully when she is herself the grantor as it does when the grantor is a stranger.